IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY A. FULTZ,                                    )
                                                  )
                        Plaintiff,                )
                                                  )
        v.                                        )        Case No. 13-2271-JWL
                                                  )
CAROLYN W. COLVIN,                                )
Acting Commissioner of Social Security,           )
                                                  )
                        Defendant.                )
                                                  )
_____           )

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

("Commissioner") denying certain benefits under Sections 1602 and 1614(a)(3)(A) of

the Social Security Act ("the Act"), 42 U.S.C. §§ 1381a, 1382c(a)(3)(A).   For the

reasons set forth below, the Court **affirms** the Commissioner's decision.


### I.      Background and Governing Standards

Plaintiff applied for a period of disability, disability insurance benefits, and

supplemental security income, based on an alleged disability beginning October 1, 2008.

In due course, plaintiff exhausted proceedings before the Commissioner, and he now

seeks judicial review of the final decision denying benefits.   Plaintiff alleges that the

Administrative Law Judge (ALJ) erred in failing to find certain conditions to be severe

impairments; and in failing to credit the testimony of plaintiff and his wife.

The Court's review is guided by the Act. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." *See* 42 U.S.C. § 405(g). The Court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wall*, 561 F.3d at 1052; *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *See Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  *See* 20 C.F.R. § 416.920; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *See Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *See Williams*, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  *See* 20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  *See id.*

The Commissioner next evaluates steps four and five of the sequential process—determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, the claimant is able to perform other work in the economy.  *See Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084).  In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work.  *See Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006); *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n.2.  At step five, the burden shifts to the

3

Commissioner to show that there are jobs in the economy that are within the RFC assessed. *See id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.**   <u>**Analysis**</u>

  *A.*   <u>*ALJ's Decision*</u>

The ALJ denied plaintiff's claim for benefits, ruling that plaintiff was not disabled within the meaning of the Act. In step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2008. In step two of the analysis, the ALJ found that plaintiff's degenerative disc and joint disease of the lumbar spine constituted a severe impairment. The ALJ also found that plaintiff's alleged shoulder pain was not a severe impairment, either by itself or in combination with other impairments, and that such pain did not result in a greater degree of functional limitation than the RFC determined by the ALJ. The ALJ noted that plaintiff had asserted that he suffered from depression, but that such condition was not a medically determinable impairment based on the record in the case. In step three, the ALJ concluded that plaintiff's impairments did not equal the severity of the listed impairments.

The ALJ then determined the following RFC for plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); he can lift, carry, push and pull 10 pounds occasionally [and] 5 pounds frequently, stand and walk no more than 2 hours in an 8 hour day and sit no more than 6 hours

4

in an 8 hour day; he needs to be able to alternate sitting and standing in 30 minute intervals; he cannot lift below waist level and is limited to stooping 3-4 times a day; he cannot climb ladders, ropes, or scaffolds, crawl, kneel, or crouch, and he can only perform all other postural activities on an occasional basis.

The ALJ found that the "objective clinical and diagnostic evidence" did not support plaintiff's allegations of greater functional limitations. The ALJ reviewed the medical evidence and noted that no physician had opined that plaintiff had such limitations as alleged. The ALJ stated that plaintiff's allegations were "not entirely credible." The ALJ found that plaintiff had exaggerated his symptoms at the hearing; for instance, the ALJ found that the medical evidence did not support plaintiff's allegations that he had a lot of numbness and could not stand for more than 10 to 20 minutes. The ALJ also found that plaintiff's report of his daily activities (or lack thereof) was inconsistent with evidence in the record. Finally, the ALJ stated that the fact that plaintiff had ceased substantial work several years prior to the alleged onset of the disability suggested that he quit working for reasons unrelated to his impairments and that he could have continued working.

Finally, in steps four and five, the ALJ found that plaintiff could not perform any of his past relevant work, but that there were jobs that plaintiff could perform based on his RFC. Accordingly, the ALJ ruled that plaintiff did not have a disability.

### B.    *Plaintiff's Alleged Borderline Intellectual Functioning*

Plaintiff first argues that the ALJ erred in failing to find plaintiff's "borderline intellectual functioning" to be a severe impairment and in failing to consider such

impairment (whether or not severe) in determining plaintiff's RFC. In support of this argument, plaintiff points to a high school record indicating that he received special education services because he was "functioning within the Borderline range of intelligence" based on certain test scores, with "severe deficits in reading, math, and written language." He also cites his hearing testimony that he doesn't know how to spell or write "real well" and has problems reading. Plaintiff argues that two of the three jobs cited by the ALJ as acceptable in step five require a certain reading and writing proficiency.

In response, the Commissioner notes that this alleged impairment is not supported by any medical evidence in the record, as required. *See* 20 C.F.R. § 404.1508 (mental impairments must be established by medical evidence). The Commissioner further notes the absence of any evidence of specific limitations suffered by plaintiff from this alleged impairment.[1] In reply, plaintiff argues that the Court may not engage in a *post hoc* analysis to presume that the ALJ would have rejected plaintiff's allegation if he would have considered it. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given, although it may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned).

---

[1]In fact, plaintiff's high school records indicate that his grades in English and Math improved (to a B and C+ respectively) after the date of the record indicating his borderline intellectual functioning.

In this case, however, there is no pertinent evidence that this Court *could* weigh for the ALJ even if it chose to, as plaintiff failed to submit any medical evidence supporting a mental impairment as alleged.  Although the ALJ has a duty to ensure that an adequate record is developed at the hearing, the claimant must raise the issue sought to be developed; thus, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *See Hawkins v. Chater*, 113 F.3d 1162, 1164, 1167 (10th Cir. 1997).  Although the Commissioner addressed this issue in her response brief, plaintiff failed to explain how he actually raised this issue of a mental impairment before the ALJ.  Plaintiff's applications for benefits do not include any reference to such a mental impairment.  He testified that he does not spell or write well and has trouble reading, but he gave that testimony in the context of answering questions about his stress and memory and concentration.  He did not testify about specific limitations in reading and writing, and neither he nor his attorney cited his intellectual functioning as an impairment or disability.  Plaintiff's attorney did not refer to or suggest such an impairment in her cross-examination of the vocational expert at the hearing.  The fact that plaintiff did not submit the required medical evidence supporting a mental impairment further indicates that he did not intend to rely on such an impairment in alleging a disability before the ALJ.

Finally, plaintiff has not explained how the ALJ should have fashioned the RFC to include particular limitations relating to his alleged mental impairment.  For instance,

he has not indicated whether his RFC should have included a complete inability to read and write, or merely a partial one.[2] For these reasons, the Court concludes that the ALJ did not clearly err in failing to find this alleged mental impairment to be severe or in failing to consider such an impairment in determining plaintiff's RFC.

### C.   *Plaintiff's Alleged Shoulder Impairment*

Plaintiff also argues that the ALJ erred in failing to find his alleged shoulder impairment to be severe and in failing to consider limitations from that impairment in determining plaintiff's RFC.  As noted above, the ALJ found that plaintiff's alleged shoulder pain was not a severe impairment, either by itself or in combination with other impairments, and that such pain did not result in a greater degree of functional limitation than the RFC determined by the ALJ.  The ALJ noted that Dr. Chad Johanning had diagnosed plaintiff with shoulder impingement syndrome in September 2011, but that there was no indication at that time that the condition would last for 12 months as required for a disability, and that there was no record of plaintiff undergoing treatment for the shoulder.

Plaintiff argues that he did see Dr. Johanning again in November 2011 about his shoulder.  Dr. Johanning's report of that visit indicates that anti-inflammatories had not

_____

[2]Plaintiff argues that two of the jobs cited by the ALJ require a level 2 ability to read and write, and he states conclusorily that he did not meet that standard, but he has cited no evidence to support that particular conclusion.  Nor has plaintiff addressed the fact that the ALJ also cited a third job that apparently does not require such reading and writing and thus would be unaffected by any failure to include this alleged impairment.

improved the shoulder and that he would refer plaintiff to an orthopedist for an injection in the shoulder. Nevertheless, the Court concludes that substantial evidence supports the ALJ's decision not to find an severe impairment relating to plaintiff's shoulder. Plaintiff had not sought treatment for his shoulder for over a year prior to September 2011, and as the ALJ noted, there was no evidence that that condition would last for more than one year. Dr. Johanning stated that he would refer plaintiff for an injection, but there is no evidence, medical or otherwise, that plaintiff actually received any such treatment.

Moreover, in January 2012—two months after the November 2011 treatment—Dr. Johanning opined that plaintiff had certain work limitations relating to his back, but he did not include any limitations relating to plaintiff's shoulder, and the ALJ largely followed that opinion by Dr. Johanning in determining plaintiff's RFC. That opinion by plaintiff's treating physician provides additional evidence that plaintiff did not suffer any shoulder impairment that was sufficiently severe to affect plaintiff's RFC. In his briefs to this Court, plaintiff has failed to point to particular limitations relating to his shoulder (or to cite evidence supporting such limitations); nor has plaintiff explained how the RFC should have included any particular limitations relating to his shoulder.

Accordingly, the Court concludes that the ALJ's findings relating to plaintiff's shoulder are supported by substantial evidence, and that therefore the ALJ did not clearly err in failing to finding a severe shoulder impairment or in failing to include particular limitations in the RFC relating to plaintiff's shoulder.

D.      *Credibility of Plaintiff's Allegations*

Plaintiff next challenges the ALJ's determination that plaintiff's allegations were "not entirely credible."  An ALJ's credibility determinations are generally treated as binding on review.  *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's credibility determinations, the Court will usually defer to the ALJ on matters involving witness credibility.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *See Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)); *Hackett*, 395 F.3d at 1173 (same).

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); *see also Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966) (same).  Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the Court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Although plaintiff has challenged the ALJ's credibility determination, he has not offered any specific arguments about how the ALJ erred in determining the RFC as a result of that credibility determination.  Plaintiff relies most heavily on his testimony that he could stand only for periods of "five, 10, 20 minutes," and he thus appears to take issue with the RFC's provision that plaintiff could stand for periods of 30 minutes.  Plaintiff's testimony also generally suggested that he was unable to perform even sedentary work.

After reviewing the medical evidence supporting his RFC determination, the ALJ provided additional reasons to support his finding that plaintiff was not credible in alleging further limitations.  In particular, the ALJ found that plaintiff had exaggerated his symptoms (numbness, inability to stand for more than 10 or 20 minutes) at the hearing; that plaintiff's report of his daily activities (or lack thereof) was inconsistent with evidence in the record; and that plaintiff had ceased substantial work several years prior to the alleged onset of the disability, which suggested that he quit working for reasons unrelated to his impairments and could have continued working.

Plaintiff argues that his allegations were supported by medical evidence.  For

11

instance, he argues that the various physicians agreed that he did suffer limitations relating to this back.  As the ALJ noted, however, no physician agreed with plaintiff that he could not stand for more than 10 or 20 minutes or that he could not work at all.  The ALJ cited substantial evidence, including the opinions of multiple physicians, to support his RFC determination.  In particular, the ALJ cited the opinion of Dr. Johanning, plaintiff's treating physician, given days before the hearing, that limited plaintiff's standing to 30 minutes at a time.  Thus, the ALJ's determination that the medical evidence did not support plaintiff's allegations was itself supported by substantial evidence in the record.

Plaintiff argues that the ALJ erred in characterizing a medical report by Dr. Shawn Morrow, who treated plaintiff in January 2010 and diagnosed him with lumbar arthralgias.  In describing the record of that visit, the ALJ noted that plaintiff "had no difficulty getting on and off the examining table but did have mild-to-moderate difficulty with other orthopedic maneuvers."  Plaintiff argues that the ALJ erred because the record actually states that there was "mild-severe difficulty with orthopedic maneuvers."  As the Commissioner points out, however, the same record includes the following statements:

> The patient had no difficulty getting on and off the examining table.
>
> There was mild difficulty with heel and toe walking.
>
> There was moderate difficulty squatting and arising from the sitting position.

There was severe difficulty hopping.

Thus, the ALJ was correct in noting mild and moderate difficulties with some orthopedic maneuvers, although he was not clear in defining the particular maneuvers to which he referred.  Dr. Morrow also noted severe difficulty hopping, but plaintiff has not explained how any failure by the ALJ with respect to that particular finding could have affected his determination of the RFC, which makes no specific reference to hopping, but prohibits crawling, kneeling, and crouching.  Thus, even assuming that the ALJ erred in characterizing Dr. Morrow's findings, that error has not been shown to have been material to the RFC or to the ALJ's determination that plaintiff was not credible with respect to his allegations that he could not stand for more than 20 minutes and could not perform work of any kind.

Plaintiff also argues that the ALJ was wrong in questioning his motivation to work.  The ALJ noted that plaintiff had ceased performing substantial work several years before the alleged onset date.  Plaintiff argues that the ALJ put too much emphasis on the October 2008 onset date, as that date was suggested to plaintiff by a claims representative based on plaintiff's having performed odd jobs up to that date.  Nevertheless, plaintiff did allege in his applications that he ceased working because of his disability in 2008, and the ALJ's finding that plaintiff had significantly decreased earnings in the years prior to that date is supported by the evidence in the record (and is not disputed by plaintiff).

The ALJ further noted that, according to the medical records, plaintiff's back did

13

not get appreciably worse in October 2008 and that his back actually improved for a period after that time. The ALJ also noted a significant gap in treatment prior to September 2011, when plaintiff saw Dr. Johanning. Plaintiff argues that the ALJ erred in stating that plaintiff did not undergo additional treatment for his back after that visit. In fact, in November 2011, plaintiff again visited Dr. Johanning, who reported that plaintiff's symptoms had "gotten much worse over the last two years." The ALJ did discuss plaintiff's November 2011 MRI, however, which suggests that the ALJ did consider's plaintiff's medical records from that period. Moreover, the ALJ essentially adopted Dr. Johanning's opinion of plaintiff's limitations that he gave only two months later, in January 2012.

The evidence considered by the ALJ indicates that plaintiff did significantly decrease his work in the years prior to the alleged onset date; that plaintiff's back did improve in the period after that date; and that plaintiff did not seek treatment for a significant period during the time when he had ceased working entirely. Accordingly, there was substantial evidence in the record to support this rationale for the ALJ's credibility determination.

Plaintiff argues that the ALJ was wrong in concluding that he exaggerated his symptoms. As one example, the ALJ stated that plaintiff "reported a lot of numbness but medical evidence does not support this." Plaintiff points to medical records containing complaints about numbness in his legs and toes. Plaintiff has not related this error by the ALJ to any fault with his RFC determination, however. Again, Dr. Johanning, who

noted plaintiff's complaints of numbness in late 2011, opined in January 2012 that plaintiff was only limited to standing for 30 minutes.

Finally, plaintiff argues that he could not engage in a wide range of daily activities and that the ALJ therefore erred in stating that plaintiff's "report of daily activites is likewise inconsistent with the evidence." There was evidence in the record, however, that showed plaintiff performing intermittent physical labor (including snow shoveling), riding a lawnmower, exercising, walking and driving without assistance, and shopping. Thus, this rationale for the ALJ's credibility determination was supported by substantial evidence in the record.

In summary, any errors or unclear statements by the ALJ are harmless, as plaintiff failed to show that any such mistake affected the ALJ's RFC determination or his credibility determination. There was substantial evidence, including the opinion of plaintiff's treating physician, that plaintiff's condition was not as bad as portrayed in plaintiff's testimony. Thus, the ALJ's credibility determination was supported by substantial evidence in the record. *See Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) (concluding that, despite concerns regarding the ALJ's reliance on two particular rationales, the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

E.      *Consideration of Testimony by Plaintiff's Wife*

Plaintiff argues that the ALJ erred in failing to mention in his decision (and thus to make a credibility determination regarding) the testimony by plaintiff's wife, which

plaintiff alleges corroborated his own allegations.   At the hearing, plaintiff's wife testified that plaintiff suffered back pain; that his walking was getting worse; that he didn't sleep well; that he had to sit on one side and did not sit for long periods; that he could no longer watch movies; that he was in a lot of pain; and that everything was getting worse.

The Court recently addressed this issue of an ALJ's failure to consider third-party opinion evidence.  *See Holley v. Colvin*, 2014 WL 172183, at \*14-15 (D. Kan. Jan. 15, 2014) (Lungstrum, J.).  The Court noted that the ALJ does have a duty to consider such evidence. *See id.* at \*14 (citing, inter alia, *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006)).  Nevertheless, the Court concluded in *Holley*, based on Tenth Circuit law, that remand is not necessary, despite the ALJ's failure to consider the third-party evidence, if that evidence is largely cumulative of the plaintiff's own testimony and the ALJ's credibility determination concerning the plaintiff is supported by substantial evidence. *See id.* at \*14-15.

In this case, it is not clear that the ALJ did not consider the testimony by plaintiff's wife.  The ALJ stated in his decision that he considered all of the evidence before him, and he specifically referenced the wife's function report, finding that the report did not shed additional light on plaintiff's functional abilities. *See, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (where ALJ indicates that he has considered all of the evidence, the court's practice is to take him at his word).  Plaintiff's wife's testimony was essentially cumulative of her prior report.  For instance, in her

report, plaintiff's wife stated that plaintiff could only stand, sit, or walk for one to two hours at a time.  In her testimony, she did not give any particular time limitations for plaintiff's sitting or standing, but she testified that plaintiff could not sit long enough to watch a movie.  Moreover, plaintiff has not explained to this Court how his wife's testimony supports any additional limits not reflected in the ALJ's RFC determination. Neither her report nor her testimony supports plaintiff's allegation that he cannot stand for more than 10 or 20 minutes.  To the extent that her testimony supports plaintiff's general suggestion that he could do no work, her testimony was essentially cumulative of her prior report and plaintiff's own testimony.  Finally, as noted above, the ALJ's determination that plaintiff was not entirely credible in his allegations was supported by substantial evidence in the record.  Accordingly, even assuming that the ALJ failed to consider the wife's testimony, such error was harmless and does not provide a basis for remand.

> F.     *Summary*

In summary, the ALJ's findings concerning the impairments that could be deemed severe and the limitations that affected plaintiff's RFC were supported by substantial evidence in the record.  Similarly, the ALJ's credibility determination was supported by substantial evidence in the record.  The Court will not reweigh the evidence before the ALJ on those matters.  Plaintiff has not challenged the ALJ's determination in step five that, based on the RFC he determined, there were jobs that plaintiff could perform. Accordingly, the Court concludes that the ALJ did not clearly err in finding that plaintiff

was not disabled, and the ALJ's decision is therefore affirmed.

IT IS THEREFORE ORDERED BY THE COURT THAT judgement shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

IT IS SO ORDERED.

Dated this 27th day of August, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

18